UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  20-CV-61549-RUIZ/STRAUSS

POINT CONVERSIONS, LLC,

      Plaintiff,

v.

JUDGE NICHOLAS LOPANE,
*in his official capacity as judge in the state of Florida*,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS</u>

**THIS CAUSE** is before me upon Defendant's Motion to Dismiss ("Motion to Dismiss").

(DE 8).  The Honorable Rodolfo A. Ruiz, II, United States District Judge, referred this case to me

to take all action as required by law on Defendant's Motion to Dismiss pursuant to 28 U.S.C.

§ 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of

Florida.  Having carefully reviewed the motion, the Response (DE 13; DE 14), Plaintiff Point

Conversion, LLC's ("PC's" or "Plaintiff's") Notice of Supplemental Authority[1] (DE 16), the

---

[1] Plaintiff filed the Notice of Supplemental Authority ("Notice") on September 22, 2020, after
Defendant filed his Reply on September 16, 2020.  The Notice states that Plaintiff's Response
relies heavily upon *Howlett By and Through Howlett v. Rose*, 496 U.S. 356 (1990) and quotes a
specific holding of the case.  Plaintiff's Response does not cite *Howlett*, and it is unclear how
Plaintiff believes *Howlett* applies here.  The Supreme Court has further expounded on *Howlett* and
the holding that Plaintiff references in its Notice to state that: (1) both federal and state courts have
jurisdiction over § 1983 suits; and (2) state courts may refuse jurisdiction based upon a *neutral*
state rule regarding the administration of the courts.  *See Haywood v. Drown*, 556 U.S. 729, 734-
41 (2009) (citing *Howlett*, 496 U.S. at 381 and holding a State of New York law unconstitutional
(not "neutral") because it removed state courts' jurisdiction over certain § 1983 actions while New
York simultaneously maintained courts of general jurisdiction that regularly entertained analogous
suits.)  "[A] 'notice of supplemental authority' that raises an argument that is not in [a party's]
previous memorandum in opposition is in fact an attempt at a sur-response, which is not permitted
in the absence of court order." *United Broad. Corp. v. Miami Tele-Commc'ns, Inc.*, 140 F.R.D. 12,
13 (S.D. Fla. 1991);  "[W]here supplemental filings are permitted, their purpose is to direct the

Reply (DE 15) and being otherwise duly advised, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** for the reasons stated herein.

## I.  BACKGROUND

Plaintiff brought this action alleging that it has been denied access to courts in violation of its Constitutional rights.   (DE 1).   Specifically, Plaintiff's Complaint Seeking Declaratory, Injunctive, and Other Relief ("Complaint") filed on July 31, 2020 alleges that Defendant[2] and the Florida Courts[3] have wrongfully dismissed cases for lack of subject matter jurisdiction ("SMJ").

---

court's attention to new legal authority or evidence that was not available to the filing party at the time that party filed the original brief to which the subsequent supplemental filing pertains." *Tracfone Wireless, Inc. v. Unlimited PCS, Inc.*, No. 12-20013-CIV, 2012 WL 12996615, at \*1 (S.D. Fla. Mar. 14, 2012) (internal quotation marks and citation omitted).  Because Plaintiff's Response does not cite *Howlett*, because it is unclear how Plaintiff contends that *Howlett* applies, because *Howlett* is not new legal authority, and because Plaintiff filed its Notice after Defendant's Reply, I find that it is an improper attempt at a sur-response and do not consider or comment on it further.

[2] Plaintiff alleges that Defendant presides over ten cases, which have identical complaints bringing claims for unjust enrichment and conversion, with case no.'s 2-10 adding violations of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"): (1) PC v. Tropical Paradise Resorts, LLC. ("Tropical") – COCE18-06299 ("Tropical") ("Test Case") (stayed pending the outcome of the Fourth District Court of Appeal's decision as to SMJ in *Point Conversions, LLC v. WPB Hotel Partners LLC d/b/a Quality Inn,* 4D-19-3017 (Sept. 24, 2019 4th DCA); (2) PC v. Whitman Organization LLC – CACE19003721 ("Whitman") (dismissed for lack of SMJ on Nov. 21, 2019; *see* DE 1-22 at 17-18); (3) PC v. Deerfield Hotel One LLC - CACE19003728 ("Deerfield") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 7-8) ; (4) PC v. DHM Investments Inc - CACE19003733 ("DHM") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 5-6); (5) PC v. Miranjali LLC - CACE19003750 ("Miranjali") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 13-14); (6) PC v. A and M Hotels Inc - CACE19003767 ("A&M") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 9-10); (7) PC v. D.P. Hotels Inc. d/b/a Sleep Inn – CACE19003845 ("D.P.") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 11-12); (8) PC v. International. Hotels, et al. - CACE19004041 ("International") (dismissed for lack of SMJ on Dec. 30, 2019; *see* DE 1-22 at 2-3) ; (9) PC v. D2HM Investments LLC - CACE19004231 ("D2HM") (not yet dismissed or decided); (10) PC v. Vagabond Motel & Apts., Inc. - CACE19004043 ("Vagabond") (dismissed for lack of SMJ on Jan. 15, 2020; *see* DE 1-22 at 15-16) (Cases 2-10 collectively, the "Other Broward Cases").  (DE 1 at n.3, ¶¶ 5, 9, 11.G. and 34; DE 1-22).

[3] While Plaintiff styles its Complaint as naming one Defendant, Judge Nicholas Lopane, it also states allegations against "the Florida Courts," which it describes as "other trial and appellate court

(DE 1 at ¶¶ 5, 11.C.-G., 27-47, and n.6). Plaintiff's Complaint brings two claims: Count I asserts violations of 42 U.S.C. § 1983 for deprivation of rights secured by "Articles I and IV" of the Fourteenth Amendment[4]; and Count II seeks Declaratory, Injunctive and Other Relief under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57. (DE 1).

---

judges referenced [throughout the Complaint]." (DE 1 at ¶ 5). Plaintiff purports through this description to lodge complaints against other judges, and the allegations are so encompassing of Florida's courts that I conclude that Plaintiff is actually directing its complaints to Florida's court system as a whole. For example, Plaintiff's Complaint alleges that it "has sought appellate review on *numerous* occasions from four of Florida's five District Courts of Appeal and the Florida Supreme Court," which have refused to (in Plaintiff's view) properly address the issue of jurisdiction in Plaintiff's cases. (DE 1 at ¶ 47) (emphasis in original). Also, Plaintiff's Response explains that "Florida courts' rulings have sanctioned [a] multi-year, delay campaign that has denied PC fair and adequate substantive and procedural due process . . . violative of § 1983." (DE 13 at 3). Yet, Plaintiff has neither named nor served any judges in this action other than Judge Lopane. (DE 5). Plaintiff apparently believes that by suing a single Circuit Court Judge it can redress alleged wrongs committed by the entire state court system. Plaintiff's response asserts that, "As PC has sued Judge Lopane who is part of the 'state courts system', according to Fla. Stat. §25.382 and the Eleventh Circuit, this would include Florida's appellate courts and the Supreme Court." *Id*. at 13. Plaintiff's position is backwards and misconstrues Supreme Court and Eleventh Circuit cases finding that suing an individual state actor in his official capacity is the equivalent of suing the state itself for purposes of the Eleventh Amendment. *See id*. at 12 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Zabriskie v. Court Admin*., 172 F. App'x 906, 908 (11th Cir. 2006); *Badillo v. Thorpe*, 158 F. App'x 208, 212 (11th Cir. 2005)). Nothing in those cases suggests that Plaintiff may extrapolate a suit against an individual trial court judge in his official capacity to cover alleged wrongs committed by judges in other circuits and appellate courts. Because the Complaint does not specifically name the "other" judges or bring them as proper defendants, despite its references to a multitude of purportedly improper Florida state court decisions, I do not credit Plaintiff's allegations against "the Florida Courts" except to the extent that they overlap with, or are relevant to, the allegations against Judge Lopane. To the extent that Plaintiff is attempting, as a practical matter, to bring suit against Florida's entire judicial branch, and, indeed, the State of Florida itself, neither the State nor the state court system is a proper defendant in a § 1983 action. *See Kaimowitz v. The Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) (finding that the Eleventh Amendment "prohibits actions against state courts" because the amendment "extends to state agencies and other arms of the state" and stating that "even when a state is not named as party of record," the Eleventh Amendment bars suit "if for all practical purposes the action is against the state.").

[4] As Defendant observes, "[t]here is no 'Article I' or 'Article IV' in the Fourteenth Amendment; there is a Section 1 (providing that no State shall deprive a person of property 'without due process of law') and a Section 4 (regarding, *inter alia*, public debt of the United States)." (DE 8 at n.10). Thus, Defendant's Motion to Dismiss construes Plaintiff's Complaint as alleging a violation of Plaintiff's right to procedural due process under the Due Process Clause of the Fourteenth

Plaintiff is a software development and implementation company that paid JBSHBM, LLC for an exclusive license to a portfolio of patents that relate to the exchange of loyalty reward points ("Points") across program boundaries ("License").[5]  (DE 1 at ¶ 13).  Plaintiff used the License to develop its own product to transfer Points.  *Id.* at 14.   After bringing its product to market and determining that hotel-franchisees were already using software that allegedly violated Plaintiff's exclusive License, Plaintiff filed its Test Case to enforce its License.  (DE 1 at 15-16; DE 1-7 at 2-10).   Thus, Plaintiff's Test Case, and the Other Broward Cases, involve claims that hotel-franchisees unlawfully exchange Points in violation of Plaintiff's exclusive License to do so. (DE 1 at 12-16).  *See also Point Conversion, LLC v. Tropical Paradise Resorts, LLC*, 339 F. Supp. 3d 1350, 1353 (S.D. Fla. 2018) (noting that Plaintiff asserted in its Test Case that the hotel-franchisee defendant "encouraged the use of customer points across program boundaries by using software other than Plaintiff's").

The Test Case defendant, Tropical, attempted to remove the Test Case to the United States District Court of the Southern District of Florida on April 12, 2018, alleging that Plaintiff's causes of action required a determination of patent issues for which the federal courts had exclusive jurisdiction under 28 U.S.C. § 1338(a).  (DE 1 at ¶ 17).  The Honorable Judge Cecilia M. Altonaga,

---

Amendment as the basis for Plaintiff's action under 42 U.S.C. § 1983.  (DE 8 at 10-11).  Plaintiff's Response does not take issue with the interpretation that it is alleging a violation of due process based upon a denial of access to courts.  As discussed below, the Complaint is unclear as to the provisions of the Constitution on which Plaintiff is relying and the precise sources and contours of the right(s) that Plaintiff is claiming have been denied.  I proceed, however, by construing the allegations in the same manner as Defendant.

[5] "JBSHBM's [highly specialized] patents construct the technology to convert points across program boundaries."  (DE 1 at ¶ 18).  Tropical has alleged that JBSHBM, LLC and Plaintiff share common ownership through one of the two inventors and assignees of the patents at issue, Mr. Brian Buchheit, who formed Plaintiff in August 2017 for the purpose of "pursuing litigation as the alleged exclusive software licensee of JBSHBM while attempting to shield JBSHBM from having to defend its patents in declaratory judgment lawsuits arising from . . . patent infringement letters [JBSHBM, Inc. sent to various hotels]."  (DE 1-10 at 15-18).

United States District Court Judge in the Southern District of Florida, determined that Plaintiff's state-law claims comprising the Test Case could not be removed to federal court because Tropical had not shown that the issue of patent infringement raised a substantial question of federal law. (DE 1 at 17-18; *Point Conversion, LLC*, 339 F. Supp. 3d at 1354-57 (relying upon *Gunn v. Minton*, 568 U.S. 251, 258 (2013) and finding also that the doctrine of conflict preemption could not serve as basis for removal because it "is an anticipated defense that may be used to defeat a plaintiff's state-law claims" and does not give rise to federal SMJ)).   Thus, Judge Altonaga remanded Plaintiff's Test Case on June 13, 2018.  (DE 1 at ¶ 18).  After remand, Plaintiff amended its Initial Complaint to eliminate a claim for civil theft and to add allegations and exhibits.  (DE 1-11 at 19-20; *see also* https://www.browardclerk.org/Web2 for case number COCE18-06299 reflecting that Plaintiff filed its First Amended Complaint on September 30, 2018).

In February 2019, Tropical filed a petition for a writ of prohibition to the Fourth District Court of Appeal seeking to prevent the Circuit Court from continuing to exercise SMJ over Plaintiff's amended complaint in the Test Case on the basis that 28 U.S.C. § 1338(a) divests the state courts of SMJ to hear state-law claims arising under federal patent law.   (DE 1 at ¶ 23; DE 1-11 at 8).  Tropical argued that the amended complaint brought "federal patent infringement claims disguised as state-law claims."[6]  (DE 1-11 at 8).  On April 24, 2019, the Fourth District Court of Appeal dismissed Tropical's petition noting that Tropical "may raise its conflict preemption defense though a proper motion in the trial court and appeal from a final judgment if necessary."  (DE 1 at ¶¶ 23-24; DE 1-12 at 2).

---

[6] Tropical's petition also argued, *inter alia*, that Plaintiff should have other remedies, e.g., suing the licensor for selling exclusive rights that it refused to, or could not, enforce.  (DE 1-11 at 48).

The defendants in the Other Broward Cases then moved to dismiss those cases for lack of SMJ contending that those cases required a determination of patent issues, such as scope, validity, and infringement, and could therefore not be adjudicated by state courts according to Florida law.[7] (DE 1 at ¶¶ 35-36).  From November 2019 through January 2020, Defendant dismissed eight of the nine Other Broward Cases for lack of SMJ citing *Schachel*, 405 So.2d at 487 and 28 U.S.C. § 1338(a).  (DE 1 at ¶ 35 and n.3; DE 1-22).  In the *International* case, Defendant also stated that "[e]ven if the Court had [SMJ] to hear Plaintiff's claims, the Court finds that Plaintiff has failed to state a cause of action for unjust enrichment or conversion for the reasons stated in Defendant's Motion."  (DE 1-22 at 2-3).

On December 16, 2019, Tropical moved to dismiss Plaintiff's Test Case asserting that Plaintiff's complaint is in substance an action for patent infringement disguised as a state-law claim and, because all of Plaintiff's claims "presuppose patent infringement" and "necessarily depend[] on a determination of the scope, validity or infringement of a patent," the state court lacked SMJ under *Schachel* and *Solar Dynamics*.  (DE 1 at ¶ 26; DE 1-13).  On February 6, 2020, Defendant deferred ruling on Tropical's motion to dismiss and stayed proceedings in Plaintiff's Test Case pending: (1) the Eleventh Circuit's Mandate in Plaintiff's appeal in a case that Tropical filed in federal court where Plaintiff filed counterclaims that the United States District Court

---

[7] According to *Schachel*, "the test is: if the suit is founded on a breach of a right created by the patent laws, even if that right is confirmed by separate agreement, the case arises under the patent laws, and a state court is without subject matter jurisdiction.  On the other hand, if the suit is founded on some right falling outside the ambit of the patent laws, then the state court has jurisdiction, even if during the course of the suit the court is called upon to determine questions involving the patent laws."  *Schachel v. Closet Concepts, Inc.*, 405 So.2d 487, 488 (Fla. 3d DCA 1981) (citations omitted).  *See also Solar Dynamics, Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 211 So. 3d 294, 300-01 (Fla. 2d DCA 2017) (quoting the test in *Schachel*).

dismissed[8] and (2) the Fourth District Court of Appeal's determination as to whether Florida's

state courts have subject matter jurisdiction over a case identical to Plaintiff's Test Case.[9]  (DE 1

at ¶¶ 31 and n.11; DE 1-18).

---

[8] The Eleventh Circuit issued its opinion on May 26, 2020 finding no reversible error in the district court's dismissal of Plaintiff's counterclaims and further stated:

> [W]e affirm the district court's conclusion that Point Conversions' claims arising under Florida's Deceptive and Unfair Trade Practices Act [("FDUTPA")] are preempted by federal patent law. As to Point Conversions' declaratory judgment claims, we find no error in the district court's dismissal of these claims, which in any case it was under no obligation to entertain under the Declaratory Judgment Act, 28 U.S.C. § 2201.

*Tropical Paradise Resorts, LLC v. Point Conversions, LLC*, 806 F. App'x 966, 967 (11th Cir. 2020).  The underlying case was brought by Tropical against JBSHBM, LLC and Plaintiff "seeking a declaration of non-infringement, unenforceability, and/or invalidity of the 31 patents and damages for violations of Florida's Patent Troll Prevention Act, Fla. Stat. §§ 501.991 *et seq.*, because, among other things, 13 of the 31 patents were expired or already held to be invalid or unenforceable."  (DE 1-11 at 18) (referencing *Tropical Paradise Resorts, LLC, d/b/a Rodeway Inn & Suites v. JBSHBM, LLC, et al.*, Case No. 18-cv-60912-BB (S.D. Fla. April 19, 2018) (the "Infringement Action").

*See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2018 WL 4932282, at *1-*3 (S.D. Fla. Oct. 10, 2018), *reconsideration denied*, No. 18-CV-60912, 2019 WL 78983 (S.D. Fla. Jan. 2, 2019), and *aff'd sub nom. Tropical Paradise Resorts, LLC v. Point Conversions, LLC*, 806 F. App'x 966 (11th Cir. 2020), and *mandamus dismissed sub nom. In re Point Conversions, LLC*, 830 F. App'x 319 (Fed. Cir. 2020) (finding that, on June 8, 2018, JBSHBM, Inc. issued a covenant not to sue Tropical for patent infringement, which "strip[ped] the Court of subject matter jurisdiction over [Tropical's] declaratory judgment claims").  "Judge Beth Bloom dismissed [Tropical's] requests for a declaration . . . and declined to exercise discretionary jurisdiction over the remaining state law claims."  (DE 1-11 at 21).  Further, "Judge Bloom also dismissed [Plaintiff's] FDUTPA claims because they were preempted, and held that, like the claims raised . . . and considered by Judge Altonaga . . . [the] FDUTPA claims require a determination of whether the patents at issue are valid."  *Id.*  Plaintiff appealed Judge Bloom's order.  *Id.* at 22.

[9] *See Point Conversions, LLC v. WPB Hotel Partners LLC d/b/a Quality Inn*, 4D-19-3017 (Sept. 24, 2019 4th DCA), http://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Number&Court =4&CaseYear=2019&CaseNumber=3017 (last visited Dec. 28, 2020) (the "*WPB* Appeal")).  Oral Argument in this case has been scheduled for Jan. 5, 2021.

On April 14, 2020, Plaintiff filed a Petition for Writ of Mandamus with the Fourth District Court of Appeal seeking "the Court to require Judge Lopane to exercise jurisdiction and perform the ministerial duties required of a circuit court judge to adjudicate this matter including ruling on Tropical's motion to dismiss, adhering to the doctrine of the law of the case, and otherwise quash the February 06, 2020 order."  (DE 1 at ¶ 32; DE 1-19 at 9).  Plaintiff argued that the federal District Court and the Fourth District Court of Appeal had already determined that SMJ existed in state court because Judge Altonaga found that the Test Case did not "arise under" patent law pursuant to the *Gunn* factors and the Fourth District Court of Appeal had denied Tropical's petition for writ of prohibition.  (DE 1-19 at ¶¶ 4-10 and pp. 9-10).  The Fourth District Court of Appeal denied Plaintiff's petition for writ of mandamus on April 14, 2020 without explanation. (DE 1 at 32; DE 1-20).

Plaintiff also filed petitions for writs of mandamus with the First, Second, Third and Fourth District Courts of Appeal where other cases that Plaintiff filed alleging similar claims were dismissed for lack of SMJ, and the District Courts of Appeal "dismissed or denied the petitions without ever addressing the underlying jurisdiction issue."  (DE 1 at ¶¶ 37-39 and n.19-21). Plaintiff petitioned the Florida Supreme Court relative to the Fourth District Court of Appeal's dismissals to no avail.  (DE 1 at ¶ 43).  Plaintiff attached to its Complaint the Florida Supreme Court opinions denying its petitions.  (DE 1-28).  In each case, the Florida Supreme Court stated that: "[t]o the extent the Petitioner seeks mandamus relief the petition is hereby denied because the Petitioner has failed to show a clear legal right to the relief requested" and  "[t]o the extent the Petitioner seeks to invoke this Court's all writs jurisdiction, the petition is dismissed for lack of jurisdiction because the Petitioner has failed to cite an independent basis that would allow the

Court to exercise its all writs authority and no such basis is apparent on the face of the petition."

(DE 1-28 at 2, 4).

Plaintiff now seeks the following:

(1)     a Declaration that Judge Lopane has subject matter jurisdiction of Plaintiff's Test Case and an Order requiring that Judge Lopane adjudicate the case on the merits;

(2)     a Declaration that Judge Lopane has subject matter jurisdiction over the Other Broward Cases and an Order requiring that Judge Lopane adjudicate the cases on the merits;

(3)     that this Court declare, enjoin, and/or require that Judge Lopane be prohibited from staying Plaintiff's Test Case or further prevent Plaintiff from proceeding with discovery in the Test Case in order to effectuate Judge Altonaga's remand order;

(4)     that this Court declare, enjoin, and/or require that Judge Lopane and the Florida Courts must assert jurisdiction before finding that a claim does not state a cause of action;

(5)     that this Court declare, enjoin, and/or require that Judge Lopane and the Florida Courts cannot ignore, disregard, or strip away patent issues housed in state-law causes of action and must adjudicate the cases and cease depriving Plaintiff of Constitutionally protected rights under Article I and Article IV;

(6)     that this Court declare, enjoin, or require that Judge Lopane and the Florida Courts must adhere to the jurisdictional dictates prescribed by *Gunn* when determining whether state claims arise under patent law pursuant to 28 U.S.C. § 1338(a);

(7)     that this Court declare, enjoin, and/or require that Florida appellate courts must decide jurisdictional issues on the merits following a petition for writ of mandamus where a Florida trial court has held that it lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a);

(8)     an Order finding that Plaintiff's rights under Article I and Article IV have been violated;

(9)     an award of costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; or, in the alternative that the Court levy same or provide other relief/damages against those whom the Court finds responsible; and

(10)    any other relief the Court deems just and proper.

(DE 1 at 28-29).  Defendant seeks dismissal of this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (DE 8).

## II.   LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject-matter jurisdiction.  Also, Federal Rule of Civil Procedure 12(h)(3) provides, that if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  "It is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).  "[Original] [f]ederal-question jurisdiction exists if the cause of action arises from the Constitution, laws, or treaties of the United States," and "Congress has provided for a private, federal cause of action for the violation." *McQueary v. Child Support Enf't*, 812 F. App'x 911, 913 (11th Cir. 2020) (citing 28 U.S.C. § 1331; *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).   In particular, "[t]he U.S. Code provides [for] a private right of action against state actors who have deprived [a plaintiff of] constitutional rights."  *Id.* at 914 (citing 42 U.S.C. § 1983).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."[10]   *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted).  "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations and internal quotations omitted).  "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists" by a preponderance of the evidence. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).  In a factual attack, the trial court is free to weigh the evidence and satisfy itself as to the existence of subject matter jurisdiction; therefore, matters outside the pleadings, i.e., testimony and affidavits, are considered.  *Lawrence*, 919 F.2d at 1529. (citations omitted).

District courts must decide jurisdictional issues before considering whether an action should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (citing *Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.  This dismissal is without prejudice.")); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)[11] ("[W]here both [12(b)(1) and 12(b)(6)] apply, the court should dismiss only on the jurisdictional ground under Fed. R. Civ. P. 12(b)(1), without reaching the question of failure to state a claim under Fed. R. Civ. P. 12(b)(6).").

---

[10] Defendant asserts that he raises both a factual challenge and a facial challenge.  (DE 8 at n.1).

[11] The Eleventh Circuit has recognized the case law of the former Fifth Circuit prior to 1981 as its governing body of precedent.  *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

### B.  Failure to State a Claim

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Twombly*, 550 U.S. at 555.  "[F]actual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  A complaint's exhibits comprise "part of the plaintiff's basic factual averments." *See F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citation omitted).  Furthermore, exhibits govern when they contradict conclusory or general allegations in the complaint. *Id.* (citations omitted).  In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th

Cir. 2007).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III.  ANALYSIS

Defendant argues that: (1) Plaintiff lacks standing to sue for declaratory and injunctive relief; (2) Plaintiff's suit is barred by sovereign immunity; (3) Plaintiff's claims are barred by judicial immunity; (4) Plaintiff's action is barred as to ongoing state proceedings by the *Younger* abstention doctrine; and (5) Plaintiff fails to state a plausible claim for injunctive or declaratory relief.[12]  (DE 8 at 10-19).  I address each of Defendant's arguments in turn.

### A.  Standing

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies.  U.S. Const. art. III, § 2, cl. 1.  "The standing doctrine is an aspect of this case or controversy requirement[] and has its origins in both constitutional limitations on federal-court

---

[12] Defendant additionally asserts in a conclusory fashion that Plaintiff's Complaint is a shotgun pleading; however, Defendant fails to provide any explanation or analysis as to why the Court should consider the Complaint a shotgun pleading other than stating that "it is unclear . . . what claim [Plaintiff] is attempting to state."  (DE 8 at 10, 19).  I construe Defendant's assertion to state that he did not receive fair notice of Plaintiff's claim.  Fair notice under Fed. R. Civ. P. 8(a) constitutes a statement as to "what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 8(a).  I find that Plaintiff has sufficiently put Defendant on notice that it is making a procedural due process claim – as Defendant presumes – due to Defendant's dismissal of its state court actions for lack of subject matter jurisdiction and due to Defendant staying Plaintiff's Test Case.  Therefore, I do not credit Defendant's assertion that the Complaint represents a shotgun pleading. Furthermore, Plaintiff has not alleged facts to make out a substantive due process claim – that Defendant violated Plaintiff's fundamental rights.  Plaintiff's Response declares in only a conclusory manner that Defendant and Florida courts have "denied PC fair and adequate substantive and procedural due process . . . that is violative of § 1983."  (DE 13 at 3).  Therefore, I also construe Plaintiff's Complaint to bring only a procedural due process claim.

jurisdiction and prudential limitations on its exercise." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991) (citations and internal quotations omitted). "Because standing is jurisdictional, a motion to dismiss for lack of standing is treated as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." *Id.* at 1203, n.42 (citation omitted).

To demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan*, 504 U.S., at 560-61. With respect to "injury in fact," a plaintiff must plead facts to show that it suffered an "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, --- U. S. ---, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).

Relief under the Declaratory Judgment Act is discretionary. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). However, "a declaratory judgment may be issued only in the case of an 'actual controversy.' Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (internal quotation marks and citations omitted). Furthermore, "[a] plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation marks and citations omitted).

Here, Defendant argues that Plaintiff is not entitled to declaratory and injunctive relief because it fails to allege a substantial likelihood of future injury. (DE 8 at 11). Specifically, Defendant argues that Plaintiff has focused on past wrongs, which fail to demonstrate that there is

a reasonable expectation of a continuing dispute.  (DE 8 at 11-12) (citing *Allen v. Wright*, 468 U.S. 737 (1984)).  Further, Defendant argues that allegations of erroneous dismissal of Plaintiff's state court actions provide an insufficient basis to infer illegal future actions that will deprive Plaintiff of its constitutional rights to procedural due process.  (DE 8 at 11-12; s*ee  also Allen*, 468 U.S. at 752, *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (asking: "[i]s the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?")).  In sum, Defendant argues that Plaintiff's allegations of Defendant and the Florida courts' wrongful past actions, even if true, are too speculative to demonstrate a future deprivation of Plaintiff's procedural due process rights.  (DE 8 at 12).

Plaintiff responds that it has ongoing uncertainty as to which court system will hear its cases given the contradictory state and federal court determinations as to subject matter jurisdiction.  (DE 13 at 5).  Further, Plaintiff argues that it is not too speculative to infer that Defendant and the appellate courts will dismiss the two (2) pending cases for lack of subject matter jurisdiction just as they have dismissed the past eight (8) cases.  *Id.* at 8.  Plaintiff also argues that it has sufficiently pled an ongoing controversy by alleging that Defendant presides over and has stalled two (2) of its cases[13] and has dismissed eight (8) cases by holding that they belong in federal

---

[13]  The Complaint specifically alleges that Defendant stayed Plaintiff's Test Case, which stay was sanctioned by the Fourth District, and that Plaintiff has been unable to conduct discovery in the Test Case or in the Other Broward cases due to the incorrect contention that Florida's courts lack SMJ.  (DE 1 at ¶ 27).  Plaintiff bemoans that, 28 months following the filing of the Test Case, it has been unable "to take a single deposition" in the Test Case or in the Other Broward Cases.  *Id.* As discussed further below with respect to abstention, I do not find such time period extraordinary or inordinate especially given the procedural history: Tropical attempted to remove the Test Case on April 12, 2018; the Test Case was remanded on June 13, 2018; Tropical moved to dismiss Plaintiff's amended complaint in the Test Case on October 10, 2018 ("MTD"); following denial of the MTD, Tropical asserted counterclaims on January 4, 2019, which brought the jurisdictional amount in controversy within the ambit of the Circuit Court; Tropical filed a petition for writ of prohibition to the Fourth District Court of Appeal on February 20, 2019, which was denied on April 4, 2019; and Tropical moved to dismiss the Test Case for lack of SMJ on December 16, 2019.  *Id.* at ¶¶ 17-27.  Defendant then stayed the Test Case on February 6, 2020 pending a decision

court in direct conflict with Judge Altonaga's finding that the cases belong in state court. (DE 13 at 9-10).

Defendant replies that Plaintiff improperly seeks an advisory opinion regarding whether Plaintiff's cases belong in federal or state courts. (DE 15 at 1). Defendant also asserts that Plaintiff does not have standing to seek prospective declaratory relief because Plaintiff fails to meet its burden to demonstrate "a substantial, definite and concrete controversy, 'between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (DE 15 at 3-4) (quoting *MedImmune, Inc.*, 540 U.S. at 140). Specifically, Defendant argues that Plaintiff's allegations, even if true, do not establish that Defendant has "adverse legal interests" to Plaintiff and that there is substantial likelihood that Defendant will immediately take some action that will violate Plaintiff's constitutional rights in the future. *Id.* at 4. Thus, Defendant re-asserts that Plaintiff's claims regarding future injury are speculative. *Id.*

I agree that Plaintiff has failed to allege a case or controversy sufficient to establish standing for seeking the requested declaratory and injunctive relief. Plaintiff's "alleged harm is not immediate or definite and is speculative because past alleged violations do not establish a continuing violation." *Haim v. Monroe Cty.*, No. 4:20-CV-10058-KMM, 2020 WL 4910854, at *4 (S.D. Fla. Aug. 17, 2020) (finding "a speculative allegation that elected officials will enact further unspecified laws [that violate] the U.S. and Florida constitutions [were] insufficient to confer standing").

---

of the Fourth District Court of Appeal on the specific issue of SMJ that Plaintiff complains has not yet been addressed on the merits. (DE 1 at ¶¶ 31 and n.11; DE 1-18). As footnoted *supra*, the Fourth District scheduled oral argument in the *WPB* Appeal for January 5, 2021. As Defendant notes, the docket in the *WPB* Appeal indicates that Plaintiff's motion for continuance of oral argument that was scheduled for September 22, 2020 was granted on July 17, 2020. (DE 8-2 at 3).

Plaintiff's allegations, that Defendant has wrongfully dismissed Plaintiff's cases and that Florida's appellate courts have erroneously dismissed Plaintiff's petitions for review of these cases, elucidate that Plaintiff's basis for requesting declaratory and injunctive relief is grounded in "past alleged violations."  (DE 1 at ¶¶ 65-69)  Furthermore, Plaintiff's allegation that Defendant committed an additional error in the *International* case by finding that Plaintiff did not state a cause of action without Defendant first asserting that the Florida state court had jurisdiction also points to the past.  (DE 1 at ¶¶ 59, 72(i)(D)).  Because past actions cannot serve to demonstrate future violations, Plaintiff fails to sufficiently plead standing.

Plaintiff's allegations, however, are also speculative for other reasons.  Plaintiff asks the Court to presume that Defendant and the Florida Courts will address Plaintiff's two (2) pending cases in the same allegedly erroneous manner that they have the past eight (8)[14] while the issue of SMJ is now squarely before the Fourth District Court of Appeal.  Indeed, the pending Fourth District Court of Appeal's decision in the *WPB* Appeal, by Plaintiff's own averment, will be addressing "[t]he sole issue [of] whether the trial court has SMJ to hear PC's claims of conversion, unjust enrichment, and FDUTPA" in "a virtually identical complaint" to Plaintiff's Test Case. (DE 1 at ¶ 31, n.11).  Thus, the Fourth District Court of Appeal will address SMJ in the *WPB* Appeal in contrast to Plaintiff's allegations that the Fourth District Court of Appeal erroneously denied its petitions for review of several of the Other Broward Cases without reaching the issue of SMJ.  (DE 1 at ¶¶ 37-39 and n.19-21).

Moreover, Defendant stayed the Test Case pending the Fourth District Court of Appeal's ruling presumably to ensure his ruling is consistent with the Fourth District's interpretation of governing law.  Either the Fourth District Court of Appeal will rule there is SMJ, at which point

---

[14] *See* n.2 *supra* (identifying the two (2) pending cases as: the Test Case that Defendant stayed and *D2HM* that has not yet been dismissed or decided).

Defendant will presumably rule in Plaintiff's favor having received Fourth District guidance and having held off to get that guidance; or, he will rule against Plaintiff, at which point Plaintiff will presumably have some other appellate court remedy, including at the Florida Supreme Court or at the United States Supreme Court.  Therefore, it is appropriate to let the appellate process play out.  Postulating or conjecturing that Defendant will rule in some erroneous manner that violates Plaintiff's constitutional rights when the appellate process is still ongoing is, by definition, speculative.  Accordingly, Plaintiff's allegations, regarding past wrongful actions of Defendant and the Florida Courts, fail to demonstrate a substantial likelihood that the Florida courts will act in a manner that will violate Plaintiff's constitutional rights to procedural due process in the future.

In addition, Plaintiff asks the Court to speculate that it will be subject to the same (purportedly) erroneous ruling as Defendant issued in the *International* case, in part, because "a judge in Hillsborough County stated during a[n unspecified] hearing that he intends to enter an order dismissing all of PC's cases for lack of SMJ without prejudice; and dismissing PC's cases with prejudice for failing to state a cause of action."[15] (DE 1 at ¶ 63).  Standing alone, *International*

---

[15] Although Plaintiff fails to identify the Hillsborough County judge in its Complaint, attachments to the Complaint include an order by Circuit Court Judge Steven Scott Stephens that was issued in Hillsborough County in the case of *Point Conversions, LLC v. Signature Real Estate Investment, Inc.*; Case no.: 19-CA-002133.  (DE 1-4 at 24-31).  In that case, the Court dismissed Plaintiff's claims without prejudice finding that Plaintiff had "failed to raise a serious issue of fact or law in its pleadings." *Id.* at 31.  Further, the Court extended its finding to "all ten of the same plaintiff's cases in this division." *Id.* at 25.  The Court also stated that Plaintiff's claims as to being denied access to courts given dismissal of its claims was, if true at all, self-inflicted.  *Id.* at 30.  Specifically, the Court noted that "[w]hen asked by the court, Plaintiff's counsel was at first evasive and then acknowledged that there was an entity that could bring a patent infringement action." *Id.*  The court found that "[n]othing (except the apparent lack of merit of the core claim) prevent[ed] the patent holder from bringing an infringement action if . . . merited." *Id.*  Further, the Court found that "on the face of the complaint the patent holder and the plaintiff entity, owned at least in part by the same individual, voluntarily entered into a license agreement on which it purport[ed] to sue entities who were not party to it." *Id.*  The Court concluded that "[a] party cannot set up a structure that renders it unable to sue and then complain that it is being denied access to court." *Id.*  Nowhere does the Court's dismissal discuss *International*.

is unique in that it is the only case where Defendant purportedly found simultaneously that the Florida court lacked jurisdiction and that Plaintiff had failed to state a claim. Therefore, because *International* is an outlier and because it represents past action, this Court cannot reasonably infer that Defendant's allegedly wrongful ruling in *International* necessarily means that Defendant will illegally deny Plaintiff its constitutional procedural due process rights in in the future. Furthermore, Plaintiff does not identify how *International* caused the Hillsborough County judge to allegedly declare a ruling similar to *International* nor that *International* even directly bears on the Hillsborough County judge's ruling. Thus, the allegations pertaining to *International* are likewise speculative and insufficient to demonstrate that Defendant or the Florida courts will violate Plaintiff's procedural due process rights in the future.

In sum, Plaintiff's allegations of past misconduct are insufficient to demonstrate an ongoing case or controversy sufficient to confer standing. Accordingly, I find that Defendant's Motion to Dismiss for lack of standing should be granted.

## B. Sovereign Immunity

"Eleventh Amendment [sovereign] immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity. This bar exists whether the relief sought is legal or equitable." *Nichols v. Alabama State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (citations and internal quotations omitted). "Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and the State of Florida has not waived sovereign immunity or consented to suit with respect to such actions." *Driessen v. Univ. of Miami Sch. of Law Children & Youth Law Clinic*, No. 20-12562, 2020 WL 6707522, at *2 (11th Cir. Nov. 16, 2020) (citing *Cross v. State of Ala.,*

*State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995); *Hill v. Dep't of Corr., State of Fla.*, 513 So. 2d 129, 133 (Fla. 1987)).

"Suits against state officials in their official capacity are essentially actions against the state." *Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Florida Circuit Court judges are "arms of the state for Eleventh Amendment purposes." *Badillo*, 158 F. App'x at 213 ). "[W]here an arm of the state is entitled to sovereign immunity, a district court may dismiss without prejudice a § 1983 action for lack of subject matter jurisdiction." *Hatcher v. Alabama Dep't of Human Servs.*, 747 F. App'x 778, 783 (11th Cir. 2018) (citing *Nichols*, 815 F.3d at 733). Here, Defendant is a Florida Circuit Court judge and an arm of the state for purposes of Eleventh Amendment sovereign immunity.

"The doctrine of *Ex parte Young*, 209 U.S. 123 (1908), provides an exception to [sovereign immunity] for suits against state officials seeking prospective equitable relief to end ongoing and continuing violations of federal law." *Higdon*, 746 F. App'x at 810 (citing *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999); *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."). The *Young* doctrine is a narrow exception and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Udick v. Fla.*, 705 F. App'x 901, 904 (11th Cir. 2017) (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). Rather, the doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Metcalf & Eddy, Inc.*, 506 U.S. at 146. Thus, "*Young* [focuses] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265,

277–78 (1986).  In discerning whether the *Young* doctrine applies, courts "look to the substance rather than to the form of the relief sought . . . and will be guided by the policies underlying the decision in *Ex parte Young*."  *Id.* at 279 (citations omitted).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted) (finding sufficient for purposes of the "straightforward inquiry" that plaintiff requested the Court to enjoin "state officials from enforcing an order in contravention of controlling federal law").  "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."  *Id.* at 646.

Here, Defendant argues that Plaintiff "has failed to establish that [Defendant] is engaging in an ongoing violation of federal law" such that the *Ex Parte Young* doctrine prevents Plaintiff's action from being barred under the Eleventh Amendment.  (DE 8 at 13).  Plaintiff responds that it has sufficiently "alleged ongoing violations of Federal law" because it asks this Court to "correct the State's interpretation of Federal law" pertaining to jurisdiction and "effectuate [federal court] orders."[16]  (DE 13 at 15).

---

[16] Defendant's Reply focuses on the argument that Plaintiff improperly named the "state court system" as a defendant and that a state court system is a state agency that does not qualify as a person for purposes of a §1983 claim.  (DE 15 at 6).  As I detail above, I agree that the state court system is an improper defendant to the extent that Plaintiff is attempting to bring suit against Florida's entire judicial branch.  I find it unnecessary here, however, to discuss further whether Plaintiff's suit properly invokes the "state court system" or whether Plaintiff should be excused from naming and serving other Florida judges who issued rulings about which Plaintiff complains. Plaintiff has named Defendant in his official capacity, which is sufficient for potential application of the *Ex Parte Young* doctrine.

I agree that Plaintiff has failed to allege continuing violations of federal law and has, therefore, failed to sufficiently plead that *Ex Parte Young* applies to allow Plaintiff's action to proceed.  Plaintiff's overarching complaint is that it lacks access to courts to bring its claims to enforce its purportedly exclusive License.  As I have previously described, Plaintiff acknowledges that the Fourth District Court of Appeal is set to decide whether a Florida trial court has SMJ to hear Plaintiff's claim in a complaint that is identical to Plaintiff's Test Case.  (DE 1 at ¶ 31, n.11). The fact that the Fourth District is deciding the issue of SMJ on the merits shows that there is not an ongoing lack of access to courts.  Also, to reiterate a previously stated point, if the Fourth District rules against Plaintiff, then Plaintiff may have rights to appeal to higher courts. Accordingly, Plaintiff's own averments regarding its pursuits in state court belie its claim that Defendant or the Florida Courts have violated its due process rights by denying it access to courts.

The fact that Plaintiff does not prevail in bringing its claims in state court does not equate to a constitutional violation of its rights to procedural due process.[17]  Plaintiff does not cite even a single case finding that a plaintiff was denied procedural due process in the form of denial of access to court where a state trial court dismissed the plaintiff's case for a lack of SMJ or stayed a plaintiff's case awaiting relevant appellant rulings.  Nor have I otherwise found any such case.  In sum, Plaintiff fails to demonstrate a continuing violation of federal law because its own averments demonstrate access to state courts contrary to its allegations otherwise, and Plaintiff fails to support how or why Defendant's dismissal of Plaintiff's cases for lack of SMJ, or staying of a case, could constitute a violation of its right to access courts.

---

[17] As previously noted, I must presume that the Plaintiff is alleging a violation of the right to procedural due process, as Plaintiff has failed to actually articulate the basis and contours of the constitutional right that it purports to enforce, and its references to parts of the Constitution are inconsistent, conflicting, and at times, non-sensical.

Furthermore, to the extent that Plaintiff asserts that Defendant's failure to adjudicate Plaintiff's Test Case on the merits constitutes an "ongoing violation of federal law" for failing to comply with Judge Altonaga's remand of Plaintiff's Test Case, Plaintiff carries the obligations stemming from that remand too far.  First, the remand is specific to the complaint that Plaintiff filed in its Test Case at the time of remand.[18]  Plaintiff filed an amended complaint in the Test Case after the remand.[19]  Also, the remand is not controlling as to Plaintiff's other cases.  Second, Judge Altonaga's finding that the Federal District Court did not have subject matter jurisdiction in Plaintiff's Test Case is not equivalent to stating that the Florida state court has subject matter jurisdiction.  Therefore, to the extent that Plaintiff argues that Florida courts are violating federal law on the grounds that Judge Altonaga's remand requires Florida courts to adjudicate Plaintiff's cases on the merits, that argument fails.  Accordingly, for all of the above reasons, *Ex parte Young* does not apply, and Defendant's Motion to Dismiss should be granted on the basis of sovereign immunity.

## C.  Judicial Immunity

"A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court . . . regardless of whether he made a mistake, acted maliciously, or exceeded his authority . . . unless [the judge] acted in the clear absence of all jurisdiction."

---

[18] *See, e.g., STC.UNM v. Quest Diagnostics Inc.*, No. CV 20-197 KG/KK, 2020 WL 4734899, at *3 (D.N.M. Aug. 14, 2020) (explaining that removal of an amended state court complaint is possible where plaintiff voluntarily amends after remand with different alleged facts such that a new ground for removal appears).

[19] *See* DE 1-11 at 19-20; *see also* https://www.browardclerk.org/Web2 for case COCE18-06299. It is unclear, and unnecessary to determine for purposes of making the point that Plaintiff carries the implications of Judge Altonaga's remand too far, whether Plaintiff's amended complaint provides new grounds for removal.

*McCullough v. Finley*, 907 F.3d 1324, 1330–32 (11th Cir. 2018) (citations omitted).  Four factors

inform whether the nature and functions of alleged acts are judicial:

> (1) the precise act complained of is a normal judicial function; (2) the events
> involved occurred in the judge's chambers; (3) the controversy centered around a
> case then pending before the judge; and (4) the confrontation arose directly and
> immediately out of a visit to the judge in his official capacity.

*Id.* at 1331.  "A judge acts in 'clear absence of all jurisdiction' only if he lacked subject-matter

jurisdiction."  *Id.* at 1332.  However, there is a narrow exception to judicial immunity in cases

where a plaintiff is seeking injunctive relief under 42 U.S.C. § 1983.

Pursuant to 42 U.S.C. § 1983, "in any action brought against a judicial officer for an act or

omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable."   42 U.S.C. § 1983.

Congress amended 42 U.S.C. § 1983 in 1996 as part of the Federal Courts Improvement Act "to

bar injunctive relief unless declaratory relief is inadequate" in suits against a judicial officer.

S.Rep. No. 104–366, reprinted in 1996 U.S.C.C.A.N. 4202, 4217.  As aptly explained by the Third

Circuit:

> The foregoing amendatory language to § 1983 does not expressly authorize suits
> for declaratory relief against judges. Instead, it implicitly recognizes that
> declaratory relief is available in some circumstances, and then limits the availability
> of injunctive relief to circumstances in which declaratory relief is unavailable or
> inadequate. The language is not an express authorization of declaratory relief, but
> simply a recognition of its availability or unavailability, depending on the
> circumstances, which the statute does not delineate. A review of the legislative
> history confirms this reading of the amendment. The Senate Report accompanying
> the amendment suggests that the amendment's purpose was to overrule the Supreme
> Court's decision in *Pulliam v. Allen*, 466 U.S. 522, 541–43, 104 S.Ct. 1970, 80
> L.Ed.2d 565 (1984) (holding that judicial immunity was not a bar to awards of
> attorney's fees and costs or to demands for injunctive relief), not to alter the
> landscape of declaratory relief.

*Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–98 (3d Cir. 2000) (citing S.Rep. No.

104–366, reprinted in 1996 U.S.C.C.A.N. 4202, 4217).   Courts consider declaratory relief

available where there is a remedy for review or a right to appeal, and such remedy does not become "unavailable" merely because a plaintiff is unsuccessful in their pursuit of it. *See Stevens v. Osuna*, 877 F.3d 1293, 1308, n.13 (11th Cir. 2017) (holding that judicial immunity protected an immigration judge from injunctive relief and rejecting plaintiff's contention regarding "no other remedy to review" where "a formal administrative process [was] available for filing complaints against [the judge and plaintiff had] availed herself of that [process]" but was not satisfied with the result); *William Penn Apartments v. D.C. Court of Appeals*, 39 F. Supp. 3d 11, 19 (D.D.C. 2014) (holding that the D.C. appellate court's decision to decline a plaintiff's appeal "[did] not make declaratory relief unavailable because [the plaintiff] could have petitioned for a writ of certiorari in the Supreme Court under 28 U.S.C. § 1257") (citation omitted).

Furthermore, "[j]udicial immunity does not extend to declaratory relief." *Wells v. Miller*, No. 15-CV-80412, 2015 WL 12953099, at *2 (S.D. Fla. June 30, 2015), *report and recommendation adopted*, No. 15-80412-CIV, 2015 WL 12953100 (S.D. Fla. Nov. 13, 2015), *aff'd*, 652 F. App'x 874 (11th Cir. 2016) (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)). In other words, while Congress did not expressly authorize declaratory relief in its 1996 amendment, it also did not extend judicial immunity to preclude it. *Brandon E. ex rel. Listenbee*, 201 F.3d at 197–98.

"To obtain declaratory relief, a plaintiff must establish: (1) that there was a violation; (2) that there is a serious risk of continuing irreparable injury if the relief is not granted; and (3) the absence of an adequate remedy at law." *Wells*, No. 15-CV-80412, 2015 WL 12953099 at *2. Furthermore, both "declaratory and injunctive relief is . . . [improper if a plaintiff] has an adequate remedy at law." *Tarver v. Reynolds*, 808 F. App'x 752, 755 (11th Cir. 2020) (citing *Bolin*, 225 F.3d at 1242; *Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005); *Wells*, No. 15-CV-80412,

2015 WL 12953099 at *2 ("Because Plaintiff had an adequate remedy at law, namely, the right to file an appeal from the orders at issue, he cannot receive declaratory or injunctive relief in this Court.").

Defendant argues that judicial immunity bars Plaintiff's action because Defendant's acts were taken in his judicial capacity and because Plaintiff does not allege that a declaratory decree was violated, that declaratory relief was unavailable, or that it lacks an adequate remedy at law. (DE 8 at 14-15). Plaintiff responds that its pleadings demonstrate that it lacks an adequate remedy at law "and exhausted those available to [it] when [it] petitioned the Fourth District and Florida Supreme Court." (DE 13 at 16) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) for the proposition that "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss"). Defendant replies that "receipt of an unfavorable ruling [does not constitute] 'unavailable' relief." (DE 15 at 7). Further, Defendant reiterates that "[Plaintiff] failed to plead that declaratory relief was unavailable" making dismissal appropriate. *Id.* at 8 (citing *Wells v. Miller*, No. 15-CV-80412, 2015 WL 12953101, at *2 (S.D. Fla. Apr. 8, 2015), *report and recommendation adopted*, No. 15-80412-CIV, 2015 WL 12953098 (S.D. Fla. June 8, 2015) ("Section 1983 bars the Plaintiff's claim for injunctive relief because he does not allege that a declaratory decree was violated or that declaratory relief was unavailable.").

Plaintiff's claims for injunctive relief are barred by judicial immunity for the following reasons. First, Defendant was acting in his judicial capacity when he issued the complained-of orders dismissing Plaintiff's claims for lack of SMJ and staying Plaintiff's Test Case. Indeed, the orders demonstrate all four *McCullough* factors: (1) issuing orders are a normal judicial function; (2) judges consider the controversies that parties present in their chambers and issue orders addressing those controversies from their chambers; (3) the controversy here is focused on cases

that were pending before Defendant in his judicial capacity; and (4) the confrontation (or dispute) here arose from a visit to Defendant in the sense that Defendant had responsibility for adjudicating Plaintiff's cases pursuant to which the orders issued.  907 F.3d at 1330–32.  Plaintiff's Complaint does not contest that Defendant issued the subject orders in his judicial capacity nor does Plaintiff allege that Defendant acted without SMJ.  Further, Defendant finding that his court lacked SMJ over a case is not equivalent to acting without SMJ.  Therefore, I conclude that Defendant acted in his judicial capacity in issuing the subject orders and that judicial immunity is not precluded on the basis that Defendant acted outside of his judicial capacity or without SMJ.

Second, although § 1983 allows injunctive relief where "a declaratory decree was violated or declaratory relief was unavailable," Plaintiff fails to plead facts to demonstrate that Defendant violated a declaratory decree or that declaratory relief was unavailable.  Plaintiff's Response does not even address Defendant's argument that it did not allege any violation of a declaratory decree or that declaratory relief was unavailable.  Plaintiff only argues in its Response that it pled an inadequate remedy at law and exhausted available remedies.  Exhausting available remedies, and receiving unfavorable rulings, is not equivalent to relief being unavailable.  *Hatton v. Combs*, 793 F. App'x 801, 804 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1216 (2020) ("We note that the fact that [plaintiff] did not prevail on [its] claim for declaratory relief does not mean declaratory relief was unavailable.").  Thus, I conclude that Plaintiff did not plead that declaratory relief was unavailable nor does anything in the record indicate that Defendant violated a declaratory decree.  Accordingly, judicial immunity applies to bar Plaintiff's claim for injunctive relief.

Separate and apart from the question of judicial immunity, Plaintiff is not entitled to obtain declaratory relief because it fails to establish the first required element for such claim—that there was a violation.  As discussed above, Plaintiff fails to demonstrate that Defendant's dismissal of

Plaintiff's cases for lack of SMJ constitutes a violation of its right to access courts.  In fact, the Fourth District Court of Appeal is set to address the very issue that Plaintiff complains the Florida Courts are not addressing—whether there is SMJ over Plaintiff's claims.  Plaintiff's complaint that it is taking too long to obtain a ruling on the merits of its claims is of no moment; I disagree that Defendant has been untimely in the adjudication of Plaintiff's Test Case, as Plaintiff contends, for the reasons I stated above.  Further, I conclude that Defendant staying the Test Case is reasonable under the circumstances and that there is nothing that indicates such untimely adjudication of Plaintiff's claims that it amounts to a violation of Plaintiff's constitutional due process rights.  For these reasons, I find that Plaintiff fails to sufficiently allege a violation warranting declaratory relief.

Plaintiff's claims for both declaratory and injunctive relief also fail because Plaintiff did not sufficiently allege the absence of an adequate remedy at law.  Although Plaintiff asserts that the many exhibits to its Complaint show "how and why PC lacks an adequate remedy at law," as noted above, receiving an unfavorable ruling does not equate to a remedy being unavailable or inadequate.  Although Plaintiff objects to the time that it has taken to pursue its available remedies, for the reasons previously stated, the time that Plaintiff has spent adjudicating its Test Case is not inordinate under the circumstances of that case and is, therefore, an insufficient reason to find that Plaintiff has an inadequate remedy at law.  Furthermore, the fact that Plaintiff complains that it has exhausted its claims just serves to show that Plaintiff had remedies and is no indication that the remedies were inadequate.

Moreover, as Defendant argues, Plaintiff's Complaint is essentially devoid of allegations of an inadequate remedy at law.  In fact, Plaintiff's Complaint mentions only once, in footnote 21, that a remedy is inadequate, which does not merit a finding that Plaintiff has sufficiently pled an

inadequate remedy at law.  Specifically, Plaintiff contends that because the appellate courts dismissed or denied Plaintiff's petitions without ever addressing the issue of SMJ, Plaintiff has two remaining options: to refile its cases in federal court or to file a state appeal.  (DE 1 at n.21).  Plaintiff asserts that filing a state appeal:

> does not provide an adequate remedy because the only viable outcome of an appeal in accordance with *Gunn* would require the defendants/appellees to answer the complaints in order to determine whether the patent issues are disputed.  Given the trial court[']s orders and reasonings which do not align with *Gunn*, [Plaintiff contends that] this inevitably leads to [the] absurd result [that] three appellate proceedings (1 petition, 2 appeals) [are required] simply to determine whether Florida's courts have the authority to hear [Plaintiff's] cases.

*Id.*  Such allegations are attenuated, speculative and insufficient to plead "the absence of an adequate remedy at law."

In addition, Plaintiff is about to receive a decision from the Fourth District Court of Appeal as to whether Florida's trial courts have SMJ over Plaintiff's claims, a decision that it asks this Court to decide instead under the premise that it is being denied access to courts.  The fact that a decision regarding the state courts' SMJ is forthcoming from a Florida appellate court demonstrates that Plaintiff has an adequate remedy at law.  As I discussed above, further remedies are presumed to be available thereafter, if merited.  *See Davis v. State*, 953 So. 2d 612, 613 (Fla. 2d DCA 2007) (Altenbernd, J., concurring) (stating that the United States Supreme Court has the power to review a decision from a Florida district court, even if that power is rarely exercised).  The right to appeal is an adequate remedy at law.  *Tarver*, 808 F. App'x 752 at 755 (citations omitted); *Wells*, No. 15-CV-80412, 2015 WL 12953099 at *2.  Plaintiff retains the right to appeal and, therefore, has an adequate remedy at law making declaratory and injunctive relief improper.

Because Plaintiff fails to sufficiently plead that it has no adequate remedy at law, I conclude that Defendant's Motion to Dismiss is due to be granted as to Plaintiff's claims for injunctive and

declaratory relief.  In addition, for the reasons stated above, judicial immunity bars Plaintiff's claim for injunctive relief.

### D.  *Younger* **Abstention Doctrine**[20]

The Younger abstention doctrine recognizes that federal courts appropriately abstain from exercising jurisdiction in certain exceptional circumstances.  *Barone v. Wells Fargo Bank, N.A.*, 709 F. App'x 943, 947–48 (11th Cir. 2017) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)).  Indeed, "[t]he doctrine prohibits federal courts from interfering with or enjoining three 'exceptional' types of state proceedings: (1) criminal prosecutions; (2) civil proceedings that are akin to a criminal prosecution; and (3) 'civil proceedings involving certain orders [that are] uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id.* at 948 (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 78).  If the state proceedings are one of the three exceptional types, then additional factors are considered: "(1) [whether there is] an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges."  *Id.* (listing the *Middlesex* factors as identified in

---

[20] Defendant also argues in a footnote that, to the extent Plaintiff is dissatisfied with state court rulings, this Court is without jurisdiction to overturn any final orders of the state court pursuant to the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine bars federal district courts from hearing 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Tarver*, 808 F. App'x at 753 (quoting *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013); *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir.2009) (per curiam) ("The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."). Defendant concedes, and I agree, that the doctrine does not appear to apply here on grounds that the state proceedings have not yet ended such that there is a state court final judgment at issue. (DE 8 at n.14). Nonetheless, the doctrine arguably applies to cases that Defendant dismissed for lack of SMJ to the extent that the judgments in those cases are final judgments. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). "So long as the constitutional claims of [a plaintiff] can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Cty. Ethics Comm.*, 457 U.S. at 435. Thus, even when the state proceedings are one of the three exceptional types and the *Middlesex* factors favor abstention, an exception prohibits abstention if: "(1) there is evidence that the state proceedings are motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where constitutional issues can be raised." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948 (11th Cir. 2015) (citing *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir.2004)). A plaintiff bears the burden to demonstrate the exception applies. *Dandar*, 619 F. App'x at 948; *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1277 (S.D. Fla. 2007) (citing *Juidice v. Vail*, 430 U.S. 327, 338 (1977)).

Defendant argues that the *Younger* abstention doctrine applies here on the basis that Defendant's order staying Plaintiff's Test Case "pending a ruling from the Eleventh Circuit Court of Appeals and the Fourth District Court of Appeals clearly is in furtherance of the state court's ability to perform its functions." (DE 8 at 16). Defendant then argues that abstention is appropriate in this case because Plaintiff has failed to carry its burden to demonstrate that an exception to abstention applies, including that it cannot raise and vindicate its claims in the ongoing state court proceedings. *Id.* at 16-17. Plaintiff responds that *Sprint Commc'ns, Inc.* instructs that "even in the presence of parallel state proceedings, abstention . . . is the exception, not the rule" and that it is consistent with Supreme Court precedent for this Court to review "the decisions and processes on issues relating to or effecting federal law" such as Plaintiff is seeking here. (DE 13 at 16-17); *see Sprint Commc'ns, Inc.*, 571 U.S. at 81-82 (explaining that *Younger* applies only to the three

types of exceptional circumstances recognized in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ("*NOPSI*") and that the *Middlesex* factors do not extend the doctrine's application beyond the three types "even in the presence of parallel state proceedings").  Plaintiff thus contends that this case is not one of the three types of cases to which abstention would apply.  *Id.* at 16 (citing *NOPSI*); *see also Sprint Commc'ns, Inc.*, 571 U.S. at 78 (citing, *inter alia*, *NOPSI* at 368).  Plaintiff also argues that evidence exists in this case of "bad faith enforcement of questionable state law" and that there have been "inordinate delays which have already occurred in protracted litigation." *Id.* at 17 (quoting from *Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 226 (1964) (referring to a motion to dismiss "the supplemental amended complaint filed . . . ten years after [the] action was instituted")).  Defendant replies that Plaintiff misapplies the *Younger* abstention doctrine and conflates the jurisdiction of the United States Supreme Court and federal district court.

For the reasons that follow, I find that the *Younger* abstention doctrine applies in this case and that Plaintiff fails to carry its burden to show that an exception precludes the doctrine's application.  First, I find that this case is one of the three "exceptional" types of state proceedings that *Sprint* prohibits federal courts from interfering with or enjoining.  Specifically, the case represents a "civil proceeding[] involving certain orders [that are] uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc.*, 571 U.S. at 78.  Here, the civil proceeding involves orders that decide state court jurisdiction.  As previously detailed, Defendant issued orders dismissing Plaintiff's (nearly identical) cases for lack of SMJ, stayed a case that was remanded, and has yet to decision another case while awaiting an appellate decision that will address the issue of state courts' SMJ.  Plaintiff, being dissatisfied with state

court proceedings, seeks equitable relief from this Court to essentially require Defendant and the Florida Courts to find that they have SMJ and adjudicate Plaintiff's cases on the merits.

Although *Younger* applies as the exception and not the rule, *NOPSI*, 481 U.S. at 359, courts apply *Younger* in certain civil cases that challenge state law. *See, e.g.*, *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2469 (2016) ("[Plaintiff's] federal lawsuit [brought under § 1983 challenging a state law allowing state judges to require that parents pay for their children's court-appointed attorney] implicates the way that [state] courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest.'"); *Aaron v. O'Connor*, 914 F.3d 1010, 1014, 1017 (6th Cir. 2019) (concluding in a § 1983 action, seeking to preclude a judge from adjudicating an underlying medical malpractice lawsuit, that the state courts' ability to administer the recusal decision process consistent with state law operated "uniquely in furtherance of the state courts' ability to perform their judicial functions"); *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1263 (11th Cir. 1997), *cert. denied*, 523 U.S. 1047 (noting that the state had an important interest in administering punitive damage awards sufficient to invoke *Younger* in the context of a suit to declare a state's wrongful death statute unconstitutional and that a federal court would have to conclude, contrary to principles of comity, that the state's courts were incapable of enforcing the federal constitution to prevent unconstitutional damage awards).

Here, state law governing justiciability is fundamental to the ability of the state's judicial branch to fulfill its role and thus operates uniquely in furtherance of the judicial function. Indeed, a court's finding as to its own power to adjudicate is a necessary predicate to carrying out judicial functions. Further, the state trial courts' ability to issue orders that stay a case pending dispositive

appellate rulings is uniquely in furtherance of judicial functioning.  Accordingly, I conclude that this case is of the type to which *Younger* applies to preclude federal court interference.

Second, the *Middlesex* factors weigh in favor of abstention.  Here, as discussed above, there is an "ongoing state judicial proceeding" because Defendant stayed Plaintiff's Test Case awaiting an appellate decision as to SMJ.  This Court's grant of Plaintiff's requested equitable relief "would disrupt the normal course of action in the state proceeding."  *Henry v. Fla. Bar*, 701 F. App'x 878, 882 (11th Cir. 2017) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003)).  Thus, the first factor weighs in favor of abstention.

The second *Middlesex* factor addresses whether the ongoing proceeding "implicates important state interests."  *Sprint Commc'ns, Inc.*, 571 U.S. at 78.  Here, as also discussed above, establishing the limits of the power to adjudicate is an important state interest because it is foundational to the functioning of the state's judicial branch of government.  Also, state trial courts' ability to stay cases pending relevant appellate court decisions is important to the ability of the judicial system to operate efficiently and effectively, and state court decisions to stay under these circumstances are deserving of deference and respect by the federal courts.  Thus, the second *Middlesex* factor weighs in favor of abstention.

The third *Middlesex* factor concerns whether the ongoing proceeding "provides an adequate opportunity to raise federal challenges."  *Id.*  "[P]laintiff has the burden to show that the state proceeding will not provide him an adequate remedy for his federal claim."  *Henry*, 701 F. App'x at 882 (citing *31 Foster Children*, 329 F.3d at 1279).  "A federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.*  Here, Plaintiff is appealing a case, the *WPB* Appeal, that is essentially identical to its Test Case, where the sole issue is "whether the trial court has SMJ to hear [Plaintiff's state law]

claims." (DE 1 at n.11).  Thus, Plaintiff has acquired the opportunity to obtain a ruling regarding SMJ on the merits at the state appellate level and can raise its arguments concerning the applicability of federal case law in determining state court SMJ.  If Plaintiff is unsuccessful in obtaining a favorable ruling, further appellate review is possible as previously discussed.  Therefore, I find that Plaintiff has adequate opportunity to raise its federal challenges in the ongoing proceeding.

As to extraordinary circumstances that would make abstention inappropriate, Plaintiff fails to demonstrate that any apply.  Having previously addressed that Plaintiff's claim regarding inordinate litigation delays lacks merit, I do not here repeat the details.  Plaintiff's allegations do not demonstrate protracted litigation even close to the circumstances described in *Griffin*, 377 U.S. at 229 (finding in 1964 that the case, which involved desegregation of public schools, had been delayed since 1951).  Therefore, *Younger* cannot be found inapplicable here based on delay.  Further, I do not credit Plaintiff's argument in its Response that there is evidence of bad faith in Defendant's "enforcement" (or application) of purportedly "questionable" state law.  By Plaintiff's own averments, numerous judges throughout the state court system are relying on the same allegedly incorrect case law to find a lack of state court SMJ.  (DE 1 at n. 6).  Thus, I do not conclude that there is bad faith in the Defendant's application of state law to dismiss Plaintiff's cases for lack of SMJ.  Accordingly, I find that *Younger* abstention applies to warrant granting Defendant's Motion to Dismiss.

### E.  12(b)(6) Failure to State a Claim

Defendant argues that Plaintiff fails to state a claim because it does not show that a legal right has been infringed for which there is no adequate remedy at law.  (DE 8 at 18).  Defendant also argues that, in bringing a claim for denial of access to courts that looks backward (like the

instant case), Plaintiff must identify a remedy that it cannot obtain elsewhere, i.e., in other suits. (DE 8 at 18-19) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[W]hen the access claim . . . looks backward, the complaint must identify a remedy . . . not otherwise available in some suit that may yet be brought.").  Plaintiff's Response does not comment on Defendant's assertion that it fails to sufficiently plead a claim for denial of access to courts.

Injunctive and declaratory relief are only available when a legal right has been infringed for which no adequate legal remedy exists. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005); *see also Bolin*, 225 F.3d at 1242.  Here, for reasons detailed above, Plaintiff fails to sufficiently plead the lack of an adequate legal remedy.  On this basis alone, Plaintiff claims fail.  However, for the sake of thoroughness, I also address whether Plaintiff adequately pleads denial of judicial access under *Harbury*'s pleading requirements.

The *Harbury* Court articulated two categories of § 1983 claims for denial of judicial access. *Harbury*, 536 U.S. at 413.  In the first category, the claims seek to "open the courthouse door" by remedying systemic obstacles to bringing suit, such as "cases challenging filing fees that poor plaintiffs cannot afford to pay" or prisoner suits requesting access to a law library or a lawyer to prepare and file a suit.  *Id.* A characteristic of "first category" denial of access claims is that they "place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  *Id.*

The second category of claims is characterized by allegations about wrongful official acts in specific cases that are backward-looking in the sense that the claims seek recompense for a lost opportunity to sue or settle; therefore, the remedy sought is "obtainable in no other suit in the future."  *Id.* at 414.  In other words, because of the complained-of official act, the plaintiff is permanently foreclosed from ever obtaining the relief to which it would otherwise have been

entitled.  These types of cases have typically involved conspiracies, cover-ups, and other official acts that have impeded, and now preclude, a plaintiff from obtaining a remedy in a meritorious case.  *Id.*  The cases that comprise category two "cannot now be tried" so their objective is "not the judgment in a further lawsuit, but simply the judgment in the access claim itself" as a remedy for relief that cannot elsewhere be obtained.  *Id.* at 413-14.

Here, Plaintiff's case does not fit squarely into either of the two categories of denial of judicial access articulated in *Harbury* and recognized as cognizable by other federal courts. Plaintiff does not allege a systemic obstacle to pursuing its underlying claim characteristic of the forward-looking category one case type, and it does not sufficiently allege that it has been permanently foreclosed from pursuing its claims to enforce its purportedly exclusive License characteristic of the backward-looking category two case type.

To the extent that Plaintiff complains about the pending cases on which Defendant has not ruled, it is currently in court.  Plaintiff cannot claim denial of access to courts while at the same time pursuing its claims in court.  Additionally, to the extent that Plaintiff complains about dismissed cases, it does not allege a lost opportunity to pursue the right to enforce its License.  In fact, Plaintiff's allegations show the opposite.  Plaintiff is presently "in court" in the *WPB* Appeal case pursuing its appellate remedies.  Through that appeal, Plaintiff has the potential to reinstate its dismissed cases (and remedy the delay affecting its pending cases).  Thus, Plaintiff does not demonstrate that it has been denied access to courts relative to either the pending cases or the cases that Defendant dismissed.

Moreover, the fact that Plaintiff's denial of access claim is not characteristic of either of the categories of cases recognized in *Harbury* is telling and suggests that Plaintiff does not have a cognizable claim.  As noted previously, Plaintiff does not cite to even a single remotely analogous

case suggesting a denial of procedural due process based on a state court's finding that it lacks SMJ or where a state court has stayed a case to await an appellate decision.

In sum, as *Harbury* recognized, if a plaintiff cannot show that it has been precluded from pursuing its claims, then, regardless of whether the claim is backward-looking or forward-looking, a plaintiff has not been denied the opportunity to litigate. *Id.* at 413. Here, Plaintiff is (and has been) afforded an adequate legal remedy, is pursuing its state law claims, and has not permanently lost its ability to pursue those claims for the reasons that have previously been articulated. Thus, Plaintiff has not been denied an opportunity to litigate, and its denial of judicial access claim fails.

## IV.   <u>CONCLUSION</u>

Accordingly, I respectfully **RECOMMEND** that Defendant's Motion to Dismiss (DE 8) be **GRANTED** as follows:

1. To the extent that the District Court concurs that it lacks subject matter jurisdiction, the Motion to Dismiss should be granted without prejudice on this basis only.

2. Alternatively, to the extent that the District Court finds that subject matter jurisdiction exists, then the Motion to Dismiss should be granted without prejudice for failure to state a claim upon which relief may be granted.

3. The Clerk should be directed to **CLOSE** this case.

4. All pending motions should be **DENIED** as moot.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 8th day of January 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz, II
Counsel of record